IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

LARRY ECHLIN and THELMA ECHLIN                                    PLAINTIFFS


v.                                    No. 5:06CV00150 JMM


LARRY MCGEE, Individually, and in his Official Capacity
as Sheriff of Lincoln County, Arkansas; CHARLIE COLE,
Individually, and in his Official Capacity as County Judge of
Lincoln County, Arkansas; Officer DAVID PARKER,
Individually, and in his Official Capacity as an employee of
Lincoln County Sheriff's Department; Sgt. LARRY SMITH,
Individually, and in his Official Capacity as employee of
Monticello Police Department; Chief TOMMY FREE,
Individually, and in his Official Capacity as employee of
Monticello Police Department; and DAVID ANDERSON,
Individually, and in his Official Capacity as Mayor of the
City of Monticello, Arkansas                                      DEFENDANTS


## MEMORANDUM OPINION AND ORDER

On June 19, 2006, plaintiffs filed suit, pursuant to 42 U.S.C. §1983 and pendent state law,

arising out of the search of premises owned by them, their arrest, and their prosecution for keeping

a gambling house before the charges were eventually dismissed.  They seek compensatory and

punitive damages for alleged violations of their rights under the 4th and 14th Amendments and for the

torts of false arrest, false imprisonment, invasion of privacy, outrage and malicious prosecution as

well as a declaratory judgment and an injunction.

Plaintiffs allege in the complaint that the affidavit for the search warrant contained false and

unreliable information which the defendants knew or should have known to be false and unreliable

and did not identify the persons making or receiving cash payments from the video arcade machines and did not assert that plaintiffs were there or involved in any conduct related to the operation of the arcade.  They state that they were out of state for approximately six weeks prior to returning on June 15, 2005, when they began to inspect their home and other properties and began making repairs and to clean up such properties which is why they were at 101 Reed Street when the police arrived. Plaintiffs allege that they were told they were under arrest, the officers searched the entire premises, and plaintiffs advised the arresting officers that they did not own or operate the video arcade business but only leased the premises.  They contend that Parker, Smith and McGee caused the criminal charges to be filed when they knew or should have known that there was no factual or legal basis to arrest them and that no probable cause existed for their arrest and the search of their property; McGee and Parker failed to properly investigate the alleged criminal activity to ensure that probable cause existed; Cole was deliberately indifferent in failing to establish and enforce safe and adequate customs or policies regarding proper and legal apprehension and detention of suspects and instead encouraged customs and policies of arresting, detaining and prosecuting innocent citizens; and McGee caused subpoenas to be issued to several banks causing a search of their bank accounts and records without probable cause or reasonable suspicion.

McGee, Cole and Parker (the "Lincoln County defendants") filed a motion for summary judgment on April 5, 2007, supported by brief, exhibits including affidavits, and a separate statement of undisputed facts.  Besides denying that they have engaged in any conduct which would violate the plaintiff's constitutional rights, these defendants assert the defenses of qualified immunity and tort immunity.  Plaintiffs filed a response supported by their affidavits and exhibits on July 5th contending that there are genuine issues of material facts in dispute.

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2512 (1986). The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986); Civil Procedure Rule 56.

In Counts v. MK-Ferguson Co., 862 F.2d 1338, 1339 (8th Cir. 1988) (citations omitted and brackets in original), the Eighth Circuit explained:

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., "[to] point[ ] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

"The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

Local Rule 56.1 provides that a party moving for summary judgment must file a separate, short and concise statement of material facts as to which it contends there is no genuine issue to be tried. The rule further provides that unless the non-moving party files a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried, all material facts set forth in the moving party's statement will be deemed admitted. In addition, the October 16th

final scheduling order set out the required format for opposing a summary judgment statement of facts pursuant to Local Rule 56.1.[1]  Plaintiffs did not file a controverting statement in conformity with the directive contained in the October 16th order.

The Lincoln County defendants' Local Rule 56.1 statement is set out below:

1. Lincoln County, Arkansas is a political subdivision of the State of Arkansas.

2. During all times relevant hereto, separate defendant, Larry McGee, was the duly elected and appointed Sheriff of Lincoln County, Arkansas.

3. During all times relevant hereto, separate defendant, Charlie Cole, was the duly elected and appointed County Judge of Lincoln County, Arkansas.

4. During all times relevant hereto, separate defendant, David Parker, was an employee of the Lincoln County Sheriff's Department.

5. McGee did not participate in the arrest of plaintiffs.

6. McGee did not actively participate in the investigation of the plaintiffs nor did he participate in the securing of any search warrants of the plaintiffs' property.

7. Cole did not participate in the arrest of the plaintiffs.

8. Cole did not actively participate in the investigation of the plaintiffs nor in the securing of any search warrants concerning the plaintiffs' property.

9. Cole, as the duly elected County Judge of Lincoln County, Arkansas, has absolutely no control, authority, or supervision over the Lincoln County Sheriff's Department.

---

[1]The Honorable George Howard, Jr., died on April 21, 2007, and the case was reassigned to the undersigned on April 27th.

10.     Cole has no responsibility for nor does he have any authority to control the actions of the Lincoln County Sheriff's Department or its employees.

11.     McGee, as the duly elected Sheriff, is the supervisory person for purposes of operations of the Lincoln County Sheriff's Department.

12.     During all times relevant hereto, the Lincoln County Sheriff's Department followed as its policy, Rule 4.1 of the Arkansas Criminal Rules of Procedure.  This rule specifically provides that a person shall not be arrested unless there is probable cause to believe that person has committed an offense.  This rule is taught at the Arkansas Law Enforcement Training Academy and at numerous seminars conducted at the Lincoln County Sheriff's Department.

13.     Parker began working for the Lincoln County Sheriff's Department on or about the 1st day of April, 2005.

14.     Parker attended numerous training session, including but not limited to the Arkansas Law Enforcement Training Academy which was completed on or about the 22nd day of December, 1989.  He was also assigned to the Pine Bluff Vice and Narcotics Unit for about one (1) year before joining the Lincoln County Sheriff's department.

15.     Parker performed all duties and responsibilities assigned to him without incident and in a very professional manner during his employment at the Lincoln County Sheriff's Department.

16.     Prior to June 19, 2006, the Lincoln County Sheriff's Department had received no complaints on Parker concerning allegations of securing search warrants illegally, using false or misleading information to obtain search warrants, or arresting people illegally.

17.   Parker was sufficiently trained as to the policies, procedures, and customs of the Lincoln County Sheriff's Department concerning the procurement of search warrants and the arresting of individuals.

18.   Parker was sufficiently trained as to the policies, procedures, and customs of Lincoln County, Arkansas concerning when a person can be arrested as a result of probable cause to believe that they have committed an offense.

19.   Prior to June 16, 2005, the Lincoln County Sheriff's Department had received various complaints concerning gambling activities at several locations in Lincoln County, Arkansas.

20.   Sheriff McGee instructed Parker to begin an investigation concerning these complaints.

21.   Parker began obtaining information concerning the alleged complaints and concluded that, among other persons, the plaintiffs were operating a gambling business at the "Echlin's Arcade."

22.   As a result of the investigation, Parker concluded that the plaintiffs were operating a gambling business based upon the information of a reliable confidential informant.

23.   After conducting an investigation, Parker completed an Affidavit for Search Warrant that he signed before the Honorable Jodi Raines Dennis, Lincoln County Circuit Court Judge.

24.   After reviewing the Affidavit for Search Warrant, the Honorable Jodi Raines Dennis signed a Search Warrant authorizing the Lincoln County Sheriff's Department to conduct a search of 101 Reed Street, which is a duplex owned by the plaintiffs.

25.   This Search Warrant was signed by the Circuit Court Judge on June 16, 2005, at 11:45 a.m. Furthermore, the Search Warrant was to be returned to the Court no later than sixty (60) days.

26.   At approximately 5:00 p.m. on the 17th day of June, 2005, officers met to discuss the execution of the search warrants.  A search warrant ops plan was prepared and delivered to the officers along with the warrants.

27.   At approximately 6:00 p.m. on June 17, 2005, officers executed the Search Warrant on the property owned by the plaintiffs.

28.   Neither Sheriff McGee nor Parker participated in the search of the property belonging to the plaintiffs.

29.   At the time of the execution of the Search Warrant, the officers located Twenty-Two gambling machines and One Thousand Four Hundred Sixty-Three Dollars ($1,463) in U.S. Currency.

30.   At the time of the execution of the Search Warrant, the plaintiffs were located in the residence with the gambling machines and currency.

31.   The decision was made by the officers conducting the Search Warrant that the gambling machines were illegal gambling machines as that term is defined in A.C.A. §5-66-101, et seq. and as that term is defined in the case of State of Arkansas v. Twenty-Six Gaming Machines, 356 Ark. 47, 145 S.W.3d 368 (2004).

32.   Based upon the information supplied to the officers from the confidential informant, the location of Twenty-Two gaming machines in the plaintiffs' residence, the location of approximately Fifteen Hundred Dollars cash, and the presence of the plaintiffs, the decision was made to arrest the plaintiffs and charge them with violating A.C.A. §5-66-103, Keeping a Gambling House.

33.    Following the conclusion of the search, officers prepared an inventory and signed a return which was filled with the Lincoln County Circuit Clerk on or about June 21, 2005.  This return identified all items seized as a result of the execution of the Search Warrant in question.

34.    Following the execution of the Search Warrant, both plaintiffs were transported to the Lincoln County Sheriff's Department during which time they were advised of their rights, executed a rights form, and Larry Echlin signed a statement indicating that the machines belonged to Bobby Bowlins.

35.    Following the execution of the Search Warrant, Thelma Echlin was transported to the Lincoln County Sheriff's Department where she was advised of her rights.  However, Thelma Echlin did not give a statement.

36.    After the plaintiffs were processed as a result of their arrest, both plaintiffs were allowed to leave the Lincoln County Sheriff's Department pending the filing of formal charges.

37.    Shortly following the execution of the Search Warrant, the sum of One Thousand Four Hundred Thirty-Six Dollars ($1,463) was transferred to the Prosecuting Attorney's Office until this matter could be concluded.

38.    Following this investigation, on or about the 27th day of October, 2005, the State of Arkansas formally charged Larry Echlin with the offense of Keeping a Gambling House in violation of A.C.A. §5-66-103.

39.    On or about the 27th day of October, 2005, the State of Arkansas formally charged Thelma Echlin with the offense of Keeping a Gambling House in violation of A.C.A. §5-66-103.

40.   After being served with criminal information, the plaintiffs retained the services of Gene McKissic, Attorney at Law.

41.   On or about the 28th day of October, 2005, the plaintiffs entered an appearance in regards to these criminal charges and filed a "Waiver of Arraignment."

42.   By waiving their arraignment, plaintiffs waived their right to challenge the probable cause for their arrest and in fact acknowledged probable cause for the arrest and chose to deal with their criminal case on its merits.

43.   At no time during the criminal proceedings did the plaintiffs ever challenge the probable cause for the search or for their arrest.

44.   At no time during the criminal proceedings did the plaintiffs file a motion to suppress evidence or a motion asserting that their arrest was in fact illegal.

45.   On or about the 28th day of April, 2006, in continuation of this investigation, Parker had a follow-up interview with Martha Magness.  Magness was a former employee of the plaintiffs and she provided detailed information concerning the gaming business that was being conducted by the plaintiffs at their arcade.

46.   On or about the 12th day of September, 2006, the Lincoln County Court granted the plaintiffs' motion to dismiss their criminal case as a result off an alleged speedy trial violation.

47.   It is significant to note that the plaintiffs' criminal cases were dismissed because of a speedy trial violation and not on the merits.

48.   At no time has any court made a determination that the plaintiffs' arrest was inappropriate or illegal.

49.     At no time has any court found that there was not probable cause found for the plaintiffs' arrest.

50.     At no time has a court found that the Affidavit for Search Warrant was insufficient to establish probable cause for the execution for the Search Warrant.

51.     No one has alleged or demonstrated that McGee and Cole participated in the search of the plaintiffs' property or their arrest.

52.     There was probable cause to arrest the plaintiffs on or about the 17th day of June, 2005.

53.     The defendants acted reasonable in these circumstances and their dealings with the plaintiffs at all times.

Larry Echlin's July 5th affidavit states:

1.      I am over the age of 21 years and have primarily resided in the State of Arkansas except for more than 20 years in military service, and on June 17, 2005, I resided at 201 East Arkansas Street, Star City, Arkansas.

2.      I caused a complaint to be filed against the defendants on June 19, 2006.

3.      That at all times relevant hereto Larry McGee was Sheriff of Lincoln County, Arkansas.

4.      That at all times relevant hereto David Parker was employed as a Lincoln County Deputy Sheriff.

5.      That at all times relevant hereto Charlie Cole was Lincoln County Judge, the chief administrator and financial officer for the county.

6.      That on June 17, 2005, I was arrested in one of my rental properties located at 101 Reed Street, Star City Arkansas by police officers from the Lincoln County Sheriff's office.

7.      That I was held in custody by Lincoln County Sheriff officers at 101 Reed Street for several hours before being taken to the Lincoln County jail in Star City, Arkansas and incarcerated for several more hours.

8.      That Lincoln County Sheriff, Larry McGee, was present during the search of 101 Reed Street and my arrest and he participated in both events.

9.      That I was held in custody and later in jail from approximately 6:00 p.m. on June 17th until approximately 4:00 a.m. on June 18, 2005 when I released on bail.

10.     That 101 Reed Street contained several video arcade machines which to my knowledge were for entertainment purposes only.

11.     That 101 Reed Street was leased to Martha Magness and had been since March 2005 as evidenced by exhibit "A" to this affidavit.

12.     That Martha Magness paid rental on 101 Reed Street through June 13, 2005 as evidenced by exhibit "B."

13.     That Martha Magness operated the arcade business and I had no involvement in the operation of her business, see composite photographs, exhibit "C."

14.     Lincoln County Sheriff Larry McGee and his deputies executed a search warrant at 101 Reed Street on June 17, 2005 and such warrant was based on fabricated information and contained many misstatement of fact.

15.     I was not in the arcade at any time between June 4, 2005 and June 15, 2005, when illegal gambling allegedly occurred.

16.     I did not work for the arcade and did not give any patron any money or assist a patron in any manner.

17. To the best of my knowledge there has never been a video arcade known as "The Echlin Arcade."

18. I left the State of Arkansas on May 5, 2005, and did not return to the state until June 13, 2005 (see composite of credit card receipts as exhibits "D."

19. On May 5 – July 9, 2005, I was working in Murdo, South Dakota at the Murdo AMOCO Food Shop and American Inn 1880 Town; see composite of payroll check as exhibits "E."

20. That I was prosecuted in the Lincoln County Circuit Court on the charge of Operating a Gambling House and had to retain legal counsel and appear in court to defend such charges.

21. That on September 12, 2005 the Lincoln County Circuit Court entered an order dismissing all criminal charges against me.

22. That the Lincoln County Circuit Court made no finding regarding the nature of operation of any video arcade machine confiscated on June 17, 2005 and no finding that such machines were illegal gambling devices.

23. That in disclosure made by the State of Arkansas to my attorney, the State never identified any witness that I gave money to any patron of the arcade or posted any surveillance evidence that I was involved in illegal gambling activity.

24. That the monies confiscated at the arcade did not belong to me and was contained in a money bag with the name Bobby Pollins on it.

25. The keys to the video arcade machines were left in the arcade in a purse and it was not my purse and I never opened any machines.

-12-

26.     That the affidavit for search warrant contains conclusory allegations of illegal conduct at the arcade but does not state time of date of such occurrence, the person committing such conduct or any facts to support the reliability of the alleged confidential informant.

Thelma Echlin's July 5th affidavit is the same as Larry Echlin's affidavit except for a portion of No. 1 when it states "except for more than 20 years when my husband was in military service."

The Lincoln County defendants contend that they are entitled to summary judgment in their official capacities, the equivalent to suing Lincoln County, since plaintiffs were only arrested after an extensive investigation concerning their gambling activities as the officers had reason to believe that the plaintiffs were operating a gambling house as confirmed by a reliable confidential informant, plaintiffs were found to be in possession of twenty-six gambling machines and almost fifteen hundred dollars on property owned by plaintiffs who were there at the time the search warrant was executed and the policy of Lincoln County is to follow Rule 4.1 of the Arkansas Rules of Criminal Procedure which provides that officers are to only arrest person in which they have reason to believe they have probable cause to effectuate an arrest.  McGee and Cole further assert that plaintiffs have not made any allegations that they were personally involved in the search or arrest, there is not vicarious liability for a supervisor under §1983; there is no proof that McGee failed to properly train supervise or control the deputies who were working for him or that the Department's policies tacitly allowed a person to be arrested without probable cause; and Cole has no authority by statute or constitution over the actions of the Sheriff's Department.

These defendants next argue that they are entitled to summary judgment on the claim of illegal arrest.  They dispute plaintiffs' assertion that there must have been no probable cause to arrest since the charges were dismissed by the court.  The Lincoln defendants rely on Rule 4.1 which

authorizes a law enforcement officer to arrest, without a warrant, any person he has a reasonable cause to believe has committed an offense.  They continue that here the decision to arrest was made by the officers on the numerous complaints received concerning this operation, the information from the confidential informant who had previously proven to be reliable that the plaintiffs were operating a gambling house and the officers locating the plaintiffs at the business along with the machines and the currency.  These defendants further argue, that even if the officer did not have probable cause, qualified immunity would apply if a reasonable officer could have believed that the arrest was lawful in light of clearly established law and the information that the officer possessed.  They point out that the criminal case was not dismissed on the merits, but due to a violation of the speedy trial rule; there was never any attempt to suppress this evidence in the criminal case or was there a finding by the court that the warrant was inappropriate or the arrest illegal.

Regarding the state claims, these defendants suggest that the Court should decline to exercise supplemental jurisdiction over these tort claims since all the federal claims against these defendants will have been disposed of by summary judgment.  However, they assert that they are entitled to tort immunity for those claims under Ark. Code Ann. §21-9-301.

Plaintiffs' response consists of their affidavits with referenced exhibits.  There is no discussion of the Lincoln County defendants' arguments nor citation to any statute or case.  Thus, the response does not comply with Local Rule 7.2(b) which provides "[w]ithin eleven days from the date copies of a motion and supporting papers have been served upon him, any party opposing a motion shall serve and file with the Clerk a concise statement in opposition to the motion <u>with supporting authorities</u>."  [Emphasis supplied.]

Earlier this month, the Eighth Circuit Court of Appeals, in <u>Shockency v. Ramsey County</u>, 2007 WL 2002545, *4 (8th Cir. 2007), summarized the qualified immunity standard as follows:

> Qualified immunity protects state officials from civil liability for actions that "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Sexton v. Martin</u>, 210 F.3d 905, 909 (8th Cir. 2000). Analyzing whether defendants are entitled to qualified immunity is a two step process, and the threshold question is whether the facts taken in the light favoring the nonmoving party show that the official's action violated a constitutional right. <u>Saucier</u>, 533 U.S. at 201.  If that answer is yes, the next question is whether the right was clearly established so that "a reasonable official would understand that what he is doing violates that right." <u>Id.</u>  Defendants bear the burden of proving that the law was not clearly established.  <u>Burnham v. Ianni</u>, 119 F.3d 668, 674 (8th Cir. 1997) (<u>en banc</u>).

The Eighth Circuit, in <u>United States v. Grant</u>, _____ F.3d _____, 2007 WL 2011644, *3 (8th Cir. 2007), recently discussed the issue of probable cause for a search warrant as follows:

> If an affidavit in support of a search warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,' " probable cause to issue the warrant has been established.  <u>United States v. Warford</u>, 439 F.3d 836, 841 (8th Cir. 2006) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).  Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge " 'should be paid great deference by reviewing courts.'" <u>Illinois v. Gates</u>, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).  Accordingly, we examine the sufficiency of a search-warrant affidavit using a " 'common sense' " and not a " 'hypertechnical' " approach. <u>United States v. Solomon</u>, 432 F.3d 824, 827 (8th Cir. 2005) (quoting <u>United States v. Williams</u>, 10 F.3d 590, 593 (8th Cir. 1993)).

Moreover, the appellate court explained the role of a confidential informant in determining probable cause in the following excerpts from <u>Walden v. Carmack</u>,156 F.3d 861, 870 (8th Cir. 1998):

> Probable cause may be found in hearsay statements from reliable persons, <u>Illinois v. Gates</u>, 462 U.S. at 245, 103 S.Ct. 2317; in hearsay statements from confidential informants corroborated by independent investigation, <u>United States v. Williams</u>, 10 F.3d 590, 593 (8th Cir. 1993) (citing <u>Draper v. United States</u>, 358 U.S. 307, 313, 79

S.Ct. 329, 3 L.Ed.2d 327 (1959)); see also, <u>United States v. Mambu Fulgham</u>, 143 F.3d 399 (8th Cir. 1998); or in observations made by trained law enforcement officers, <u>McDonald v. United States</u>, 335 U.S. 451, 454, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

\*\*\*\*

When an affidavit contains information provided by a confidential informant, a key issue that must be addressed is the reliability of that informant.  See, <u>United States v. Brown</u>, 49 F.3d 1346, 1349 (8th Cir. 1995).  Information may be sufficiently reliable to support a probable cause determination if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.  <u>U.S. v. Williams</u>, 10 F.3d at 593 (citing <u>Draper</u>, 358 U.S. at 313, 79 S.Ct. 329).  If the information provided by the informant is shown to be reliable because of independent corroboration, "then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." <u>U.S. v. Williams</u>, 10 F.3d at 593 (citing <u>Illinois v. Gates</u>, 462 U.S. at 233-34, 103 S.Ct. 2317; <u>Draper</u>, 358 U.S. at 313, 79 S.Ct. 329).

Therefore, the Court reviews the affidavit submitted by Parker for the search warrant.  The June 16th affidavit describes in detail the location and description of the premises and specifies that the part of the duplex to be searched is the business facing Reed Street with the numbers "101" displayed beside the door.[2]  Besides the two-page affidavit form with the description of the premises and items to be searched and seized as well as standard instructions, the affidavit continues for an additional three typewritten pages.  The affidavit relates that McGee, as Sheriff Elect, on or before January 1, 2005, phoned or met with all persons involved with the running or operating an illegal arcade which involved gambling/gaming devices, cited them to the applicable statute, and advised them that he intended to shut down their businesses; several of the businesses did shut down when McGee took office.

---

[2]In paragraph numbered 9 of the complaint, plaintiffs state that they "resided at 201 East Arkansas Street, Star City, Arkansas and adjoining the rear of the home is a commercial rental property owned by the plaintiffs and bearing the address 101 Reed Street" which was leased to tenants.

Parker states that he started his employment with the Lincoln County Sheriff's Department in April of 2005; the Department had received several complaints about gambling activities at several different location in the county; McGee and Parker contacted several state and federal agencies to see if they had a unit that was trained or had the main focus to investigate illegal gambling houses, but no such unit was found; and McGee and Parker began an investigation of all of the arcades using games of chance.  He continues that he noticed a sign on the door at 101 Reed Street which he referred to as the old Echlin's Day Care Center that would show open or closed, but was told by a confidential information that the door stayed locked; during business hours, several vehicles are parked in the parking lot or at the Circle N Store parking lot located in the front; and persons that enter into the business stay for long periods of time.

Parker lists probable cause for the issuance of the search warrant as: he drove though the Circle N Store's parking lot on several different dates and noted several vehicles at Echlin's; he met with a confidential informant on June 4th who stated he/she had only been in the arcade one time, he/she witnessed pay outs with U.S. currency and won $10.00, and he/she did not see anyone get paid anything except money; Parker met the confidential informant again on or about June 15th who reported that he/she had visited Echlin's a couple of more times since June 4th and the business was still running in the same manner; Parker had worked with this confidential informant for several years and he/she had always given truthful information which had resulted in several felony arrests; and, within the past 72 hours, Parker had contacted the informant and asked him/her if the operations at the arcade were still running the same way listed.  Parker further stated that, on or about May 11th, he and McGee met with Lt. John Dement with the Monticello Police Department, who had attended specialized training from the Federal Bureau of Investigation, Racketeering Records Analysis Unit,

who showed them a computer board out of a gaming device and told how one of the counters was to show how much money had taken in during the machine life time and another counter showing how much the machine has paid out.  Parker states that when he told Dement about what the confidential informant had told him and that the person making the pay outs always checks some-type of counting device inside the machine, Dement stated that it was his opinion that the devices were illegal because the counting devices could be altered to change the rate of pay out.

Although plaintiffs' affidavits counter that McGee and Parker were present during the search and arrest,[3] Magness had leased the premises, plaintiffs were out of state and not at the arcade at the time when the illegal gambling allegedly occurred, no finding has been made that the machines were illegal gambling devices, and the affidavit does not state the time and date of the illegal conduct, the person committing such conduct or facts to support the reliability of the confidential informant, the Court cannot find these arguments to be material  to the legal analysis of whether there was probable cause for the search warrant of the premises.[4]  Thus, there was probable cause for the search warrant,

---

[3]Excepts for their declaration in their affidavits that "Cole was Lincoln County Judge, the chief administrator and financial officer for the county," the plaintiffs have not controverted McGee's affidavit that Cole "has absolutely no control, authority, or supervision over the Lincoln County Sheriff's Department," Cole "has no responsibility for nor does he have any authority to control the actions of the Lincoln County Sheriff's Department or its employees," or McGee is "the supervisory person for purposes of operations of the Lincoln Count Sheriff's Department."

[4]As noted, Parker averred that he had worked with the confidential informant for several years who had always given truthful information resulting in several felony arrests and plaintiffs have not controverted that fact.  Although the affidavit does not indicate the exact dates and time the confidential informant visited the business, the affidavit does provide that the confidential informant had visited the premises and witnessed the operations once before June 4th and subsequently several times before June 15th which was confirmed by Parker within 72 hours before seeking the affidavit.  As plaintiffs have stated that they were not at the arcade between June 4th and the 15th, they have not presented any evidence to counter what activities occurred on the premises.

as found by Judge Dennis, based on the information provided by a reliable confidential informant which supported the complaints received by the Department, Parker's own observations of the outside of the premises, and consultation with a knowledgeable officer who opined that the devices seen and experienced by the confidential informant were illegal devices.  As plaintiffs' constitutional rights were not violated in the issuance of the search warrant, the Lincoln County defendants, in their individual capacities, are entitled to qualified immunity as to any federal claims regarding the search warrant.

> "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." Hannah v. City of Overland, Missouri, 795 F.2d 1385, 1389 (8th Cir. 1986).  In determining whether probable cause exists to make a warrantless arrest, a court will consider whether, based on the totality of the circumstances, the facts would justify a reasonably cautious police officer's belief that the individual arrested has committed or was committing an offense.  United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003); United States v. Wallraff, 705 F.2d 980, 990 (8th Cir. 1983).

Anderson v. Cass County, Mo., 367 F.3d 741, 745 (8th Cir. 2004).

Besides the information identified above upon which the search warrant was based, it is undisputed that plaintiffs were inside the business premises when the search warrant was executed on June 17th.[5]  In addition, although plaintiffs have sworn that the monies confiscated at the arcade did not belong to them and was in a money bag bearing the name of Bobby Pollins, they do not dispute that $1,463 in U.S. currency was found by the officers on the premises.  Moreover, while plaintiffs assert that no finding was made by the Lincoln County Circuit Court regarding the nature of any machines confiscated on June 17th or that such machines were illegal gambling devices, they have presented no evidence to dispute the trained opinion of Dement that the machines as described

---

[5]Plaintiffs stated in their affidavits that Magness' rental of the premises was only through June 15th.

by the confidential informant were illegal devices or the affidavits of McGee and Parker that the officers executing the search determined that the twenty-two machines located on the premises were illegal gambling machines as defined in Ark. Code Ann. 5-66-101, et seq., and State v. Twenty-Six Gaming Machines, 356 Ark. 47, 145 S.W.3d 368 (2004).

Therefore, based on the information known to the officers at the time the search was executed, there was probable cause for the plaintiffs' arrest for keeping a gambling house.[6]  As plaintiffs' constitutional rights were not violated by their arrest, the Lincoln County defendants, in their individual capacities, are entitled to qualified immunity as to any federal claims regarding their arrest.

A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.  Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.") (internal citations omitted) (emphasis in original).  The plaintiff must prove that the "municipality itself caused the constitutional violation at issue."  Kuha v. City of Minnetonka, 365 F.3d 590, 604 (8th Cir. 2003) (emphasis in original).  Therefore, to establish the liability of an official acting in his official capacity, the plaintiff must prove that "a policy or custom [of the city] caused the alleged violation." Rogers v. City of Little Rock, 152 F.3d 790, 800 (8th Cir. 1998).  Therefore, "[a] municipality cannot be held liable

---

[6]In June of 2005, Ark. Stat. Code §5-66-103 stated:

Every person who shall keep, conduct, or operate, or who shall be interested, directly or indirectly, in keeping, conducting, or operating any gambling house or place where gambling is carried on, or who shall set up, keep, or exhibit or cause to be set up, kept, or exhibited or assist in setting up, keeping, or exhibiting any gambling device, or who shall be interested directly or indirectly in running any gambling house or in setting up and exhibiting any gambling device or devices, either by furnishing money, or other articles for the purpose of carrying on any gambling house shall be deemed guilty of a felony and on conviction shall be confined in the Department of Correction for not less than one (1) year nor more than three (3) years.

solely because it employs a tortfeasor," meaning the municipality cannot be held liable on a respondeat superior theory.  Kuha, 365 F.3d at 603 (emphasis in original) (internal quotations and citation omitted).

Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006).

Moreover, the Eighth Circuit has summarized, in McCoy v. City of Monticello, 411 F.3d 920, 922-923 (8th Cir. 2005), the effect of qualified immunity on a municipal liability claim:

> This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.  See McVay v. Sisters of Mercy Health Sys., 399 F.3d 904, 909 (8th Cir. 2005) (stating "[s]ince we have found that [the officer's] actions were not unconstitutional, McVay cannot make a prima facie case against the City under section 1983"); Turpin v. County of Rock, 262 F.3d 779, 784 (8th Cir. 2001) (concluding because district court properly granted officers summary judgment on qualified immunity grounds, county likewise was entitled to summary judgment); Veneklase v. City of Fargo, 248 F.3d 738, 748 (8th Cir. 2001) (en banc) (declaring "where arresting police officers are absolved of liability to arrestees, the City ordinarily is not liable"); Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir. 2000) (reasoning "[b]ecause we have found that the officers' stop of the plaintiffs' car did not violate their fourth amendment [ ] rights, it follows that the plaintiffs' claim against the city (inadequate training and municipal custom) must likewise fail"); Eagle v. Morgan, 88 F.3d 620, 628 (8th Cir. 1996) (declaring decision that officers' conduct did not violate plaintiff's constitutional right to privacy disposed of related claims against the city); Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994) (holding city cannot be found liable on either a failure-to-train theory or a municipal custom/policy theory unless a defendant police officer is found liable on an underlying substantive claim).

Applying the reasoning of McCoy to the facts here, the Lincoln County defendants are entitled to summary judgment on the federal claims against them in their official capacities.

"Under 28 U.S.C. § 1367(c)(3), a court may 'decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction.'" Gibson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006).  See also, Moots v. Lombardi, 453 F.3d 1020 (8th Cir. 2006).  As the Court has granted summary judgment to McGee, Cole and Parker on the federal claims against them in both their individual and official capacities and plaintiffs have not

addressed the argument of supplemental jurisdiction, the Court is persuaded that supplemental jurisdiction should not be exercised and the pendent state claims are dismissed without prejudice.

Accordingly, the April 5th motion (#13) for summary judgment filed by McGee, Cole and Parker is granted in part as to the federal claims against them in both their individual and official capacities.  The remaining pendent state claims against McGee, Cole and Parker are dismissed without prejudice.

IT IS SO ORDERED this 27th day of July, 2007.


UNITED STATES DISTRICT JUDGE